IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNARA R. WATSON | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  06-0565 |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM AND ORDER**

AND NOW, this 13th day of October, 2006, upon consideration of the cross-motions for summary judgment filed by the parties (Doc. Nos. 7 and 8)[1] and the reply thereto (Doc. No. 9), the court makes the following findings and conclusions:

       1. On April 16, 2004, Cynara Watson ("Watson") filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, alleging an onset date of March 8, 2004.  (Tr. 34-36).  Throughout the administrative process, including an administrative hearing held on April 15, 2005 before an administrative law judge ("ALJ"), Watson's claims were denied.  (Tr. 4-6; 14-22; 27-30). Pursuant to 42 U.S.C. § 405(g), on February 2, 2006, Watson filed her complaint in this court seeking review of that decision.

       2. In his decision, the ALJ concluded that Watson had severe impairments consisting of bipolar disorder and mental retardation.  (Tr. 16 ¶ 1; 21 Finding 2).[2]  The ALJ further concluded that Watson's impairments did not meet or equal a listing and that she had the residual functional capacity ("RFC") to perform work with no exertional limitations that is limited to one to two step, routine tasks with no more than occasional contact with supervisors and co-workers and no contact with the general public.  (Tr. 17 ¶ 3; 22 Finding 6).  The ALJ also determined that Watson was not disabled.  (Tr. 21 ¶ 5; 22 Finding 12).

       3. The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  Substantial evidence is more than a mere scintilla but may be less than a preponderance.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).   If the conclusion of the ALJ is supported by substantial evidence, this court may not set

---

[1] The procedural order (Doc. No. 4)  in this action does not provide for the filing of motions for summary judgment or responses thereto.  However, I have construed the parties' motions for summary judgment as briefs and statements of issues in support of request for review.

[2] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

       4.      Watson raises two arguments in which she alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

       A.      First, Watson contends that the determination by the ALJ that she did not meet the mental retardation listing, 12.05, was not supported by substantial evidence. The capsule definition for listing 12.05 provides that in order to meet the listing, a claimant must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The required level of severity for this disorder is met, among other ways, when there is "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. at § 12.05(C). In this case, although the ALJ found that Watson had a performance IQ of 63 and an additional severe impairment, he concluded that Watson did not meet listing 12.05 because the record failed to show the requisite deficits in her adaptive functioning. (Tr. 16 ¶¶ 1, 3-5; 85). The ALJ based this conclusion on the facts that: (1) Watson had a history of performing significant gainful activity involving semi-skilled work such as a telephone collections clerk and a file clerk; (2) Watson had lived independently and could cook, shop, and do laundry; (3) the medical consultant noted that her work history, ability to live independently, and adaptive functioning were not consistent with her IQ scores; and (4) although the medical sources noted her IQ scores were consistent with borderline intellectual functioning or mild mental retardation, none of them found that she met or equaled listing 12.05. (Tr. 16 ¶ 3-5; 78; 87; 101; 103; 107; 187; 189; 198; 206).

Watson cites to Markle v. Barnhart, 324 F.3d 182 (3d Cir. 2003), for the proposition that the activities cited by the ALJ are not inconsistent with a finding of retardation, and, thus, she should have been found to have deficits in adaptive functioning. Markle is not applicable here. In Markle, the district court judge refused to credit the plaintiff's IQ score because he felt that it was inconsistent with the plaintiff's ability to independently perform self-care needs and various activities of daily living. 324 F.3d at 184. However, the Third Circuit concluded that the ALJ erred in making this finding because the IQ score was not inconsistent with the record and the facts cited by the ALJ to support his conclusion were not inconsistent with a finding of retardation. Id. at 186-87. Unlike in Markle, the ALJ in this case did not reject Watson's presumptively valid IQ score. Instead, the ALJ simply reviewed the record and made a finding, based on substantial evidence, that Watson lacked the requisite deficits in adaptive functioning. For the reasons stated above, I find no error in the ALJ's decision on this matter.

      B.      Second, Watson argues that the ALJ erred by giving limited weight to the opinion of her therapist. Watson's therapist, Dr. Russell Floyd, Ed.D. ("Dr. Floyd"), is a doctor of education, not a licensed psychologist or psychiatrist. As such, his opinion is not an acceptable medical source entitled to controlling weight and the ALJ's consideration of such individual's opinion is discretionary. See Hartranft, 181 F.3d at 361; 20 C.F.R. §§ 404.1513 (d)(1); 416.913(d)(1). In explaining his partial rejection of Dr. Floyd's opinion, the ALJ noted that Dr. Floyd was not a recognized medical source and that Dr. Floyd's findings were inconsistent with the GAF scores he assigned to Watson and the evidence regarding Watson's ability to function. (Tr. 16 ¶ 6; 105; 154-60; 206). I also note that Dr. Floyd's findings were inconsistent with the findings of the clinical

2

psychologist and medical consultant.[3] (Tr. 77-85; 87-88; 101; 103). Thus, Dr. Floyd's opinion was inconsistent with the medical evidence in the record and since he is not considered a recognized medical source, the ALJ's decision to give limited weight to Dr. Floyd's opinion was supported by substantial evidence.

Upon careful and independent consideration, the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law. Therefore, it is hereby **ORDERED** that:

5. The motion for summary judgment filed by Cynara Watson is **DENIED**;

6. The motion for summary judgment filed by the Commissioner is **GRANTED** and **JUDGMENT IS ENTERED IN FAVOR OF THE COMMISSIONER AND AGAINST CYNARA WATSON**; and

7. The Clerk of Court is hereby directed to mark this case as **CLOSED**.

s/ Lowell A. Reed, Jr.
LOWELL A. REED, JR., S.J.

---

[3] Watson asserts that Dr. Floyd's opinion was consistent with that of the clinical psychologist, Dr. Debra Taras, Psy.D. ("Dr. Taras"), however, that is clearly not true since Dr. Taras found that Watson had no difficulties with short instructions or interacting with others and noted that Watson had no apparent problem other than borderline intellectual functioning, whereas, Dr. Floyd found Watson was seriously limited in understanding simple instructions and completely unable to interact with co-workers. (Tr. 80; 82; 155). Although Dr. Taras did give Watson a GAF of 50, which denotes serious limitations, she assigned Watson this GAF as part of an intellectual only assessment. (Tr. 84-85). When Dr. Taras evaluated Watson's ability to function, she assigned her a GAF of 60, denoting moderate limitations. (Tr. 77-80).